UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In The Matter Of:                                        Case No: 10-47531
                                                         Chapter: 7
    GENEVA MARIE PHARR,                              Hon. Walter Shapero

            Debtor(s)
_____/

## OPINION ON VEHICLE VALUE FOR REDEMPTION PURPOSES

Debtor has moved for redemption of a vehicle under 11 U.S.C. § 722 - the sole issue being its value for that purpose. Debtor owns a 1998 Mercury Sable GS 4 door sedan which she purchased used in 2006 or 2007. At the time of the filing of this case on March 10, 2010, the vehicle's mileage was approximately 167,000. At the time Debtor purchased it, the mileage on it was about 110,000. She primarily uses the car to drive back and forth from her home on Detroit's east side to work in Romulus, and to take her older child to school, and her second infant child to the doctor, etc.

As her evidence of the redemption value, the Debtor presented (1) a single sheet referencing the car's year, make, model and mileage, and giving a Kelley Blue Book ("Kelley") "Private Party Value" figure of $850, for that vehicle if it were in "fair" condition (the sheet also indicates that if the vehicle was in excellent condition, that value would be $1,450); (2) photographs showing damage to the driver's side of the vehicle, which Debtor testified occurred not too long prior to the bankruptcy filing when the car was sideswiped while parked on her street; some damage to the front of the car, which Debtor testified was caused by someone backing into her at a shopping center; and a damaged passenger side rear view mirror, which Debtor said she caused herself and occurred post-filing; (3) her own testimony that there was an engine revving issue that was present when she

1

purchased the vehicle, and a shaking of the front end when she applied the brakes; (4) a collision damage repair estimate of $2,041; (5) a water pump replacement cost estimate of $185; and, (6) a terse written market estimate of value of $400, possibly for trade in purposes. As its evidence of value, the Creditor (which sold the vehicle to Debtor) presented (1) a single sheet showing a Kelley "suggested retail value" for that make and model of vehicle with the indicated mileage if it was in "excellent" condition, of $3,820; and, (2) documentation of repairs made to the vehicle prior to the time it was sold to the Debtor.

The parties agree that the Debtor has the burden of proof and that the valuation date should be the bankruptcy case filing date.

The Creditor concedes (what is obvious from the preponderance of the evidence in any event) that the car is in no better than "fair" condition. The Creditor primarily argues that the Debtor either negligently or otherwise let the vehicle fall into its indicated present state of disrepair or condition, and for that reason it would be "unfair" or inequitable to penalize the Creditor by utilizing a lower value by reason thereof. Debtor counters those arguments by saying she did not have the money to make any repairs, she was financially unable to afford insurance that might have covered such in whole or in part, and the major damage items were not her fault in any event. Suffice it to say, (1) there is no evidence before the Court as to what Debtor's contractual repair obligations, if any, were; and (2) irrespective of whether or not Debtor had, or the extent of, any such obligations, and or breached them, the Creditor's arguments in that regard are irrelevant to the issue before the Court.[1] The issue at hand is simply what in fact is the value of the vehicle for redemption purposes, regardless of why or how it came to be in its present condition.

---

[1] Creditor had (or has) other remedies for any breach of contractual obligations.

11 U.S.C. § 722 sets the redemption price at the amount of allowed secured claim, and 11 U.S.C. § 506(a)(2) referencing such sets out the valuation standard as follows:

> If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. <u>With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time the value is to be determined</u>. (Emphasis added.)

A starting point, as pointed out in some cases, is an appropriate number taken from either the NADA Official Used Car Guide or the Kelley Blue Book, or some combination of the two. See, e.g., *In re Morales*, 387 B.R. 36 (Bankr. C.D. Cal. 2008); *In re Eddins*, 355 B.R. 849 (Bankr. W.D. Okla. 2006). The NADA guide collects and publishes various figures, i.e.: "Trade in Value"; "Loan Value"; and "Retail Value." The Kelley Book in fact publishes both a "Retail Value" and a "Private Party Value," and possibly others. Those same cases seem to largely agree that once you have ascertained the proper starting point, the parties are free to present expert or other evidence to help resolve the issue.

In this case, neither party favored the Court with the full extent, definitions, and interpretive explanations of the Kelley figures they provided, let alone any other credible value opinion evidence. All that is in evidence is the indicated single pages, and, no expert or other credible opinion evidence as to value was presented. In a sense, they chose to "go by the book." The Creditor's Kelley figure, while on a suggested retail basis, was only for a vehicle in "excellent condition." The Creditor did not give the Kelley figure for a vehicle if it were not in "excellent condition," even though the Creditor essentially conceded that in fact it was not in "excellent

3

condition." If, however, one started with the Creditor's "excellent condition" figure of $3,820, and subtracted from it the figures put in evidence by the Debtor relative to repairs (totaling $2,226), one would come up with a figure of some $1,600 and, if one further deducted some allowance for the noted revving and front end shaking problems one could thereby come to a figure not that far from what Debtor is asserting as a value for the vehicle in its appropriately described "fair condition."

Debtor's figure is $850, but that is the Kelley figure on a "Private Party Value" basis. Debtor did not supply the figure determined on a "Retail Value" basis - the Debtor arguing that she believes the "Private Party Value" figure more closely meets the statutory standards. While there is at least one case that indicates that the "Private Party Value" figure may be relevant along with other figures, see *In re Kidwell*, 2007 Bankr. LEXIS 3438 (Bankr. E.D. Tenn. Oct. 4, 2007), this Court concludes the statutory language, which talks about what "a retail merchant 'would charge'," is predominant. Debtor's Kelley evidence defines "Private Party Value" as "the amount a buyer can expect to pay when buying a used car from a private party." Kelley does, as noted, in fact make available a Retail Value, but that value is unfortunately not in evidence here. One must presume, however, it would be different than the Private Party Value figure. In this Court's view, the closest to the statutory definition would be the "Retail Value" number, if for no other reason than the language in the statute is virtually the same as what Kelley makes available, using virtually that same term.[2]

The word "retail" connotes and normally means an individual sale of a small quantity of items, or a single item, to the ultimate consumer. If the inquiry were to stop there, that would likely

---

[2] Unfortunately as noted, Kelley's definition of that term is not in evidence, so one must resort to ordinary meaning.

also include one private party selling to another. However, the statute uses the phrase retail "merchant." The modifying term "merchant" must be given meaning. As such, it connotes something other than a private party (and, in this Court's view, likely a higher value number), given the likely presence of profit and overhead expense considerations present in the pricing of items sold by a "merchant," i.e., someone in the business of buying and selling at the retail level. Profit and overhead expenses are items generally either absent or of potentially less importance, or if present, possibly less likely to directly influence the selling price in the case of an private individual selling to another private individual.

The result of the foregoing, given the record (or more appropriately the lack of a record) is that the Court in the circumstances of this case must approximate what the Kelley difference between "Private Party Value" and "Retail Value," might or should be, or put differently, what the Kelley retail value number might have been were it introduced into evidence. Taking into consideration the fact that no credible opinion evidence on value, other than the indicated Kelley figures, was introduced, and given the noted analysis with reference to the Creditor's number and appropriate adjustments thereto, under all of the indicated circumstances, the Court concludes the redemption value is $900.00.

Debtor shall present an appropriate order.

**Signed on June 23, 2010**

                                        **/s/ Walter Shapero**
                                    **Walter Shapero**
                                    **United States Bankruptcy Judge**